### STATE OF CALIFORNIA *v.* ROGERS, ADM'R, ETC.

THE Constitution is not a grant of power or an enabling act to the Legislature. It is a limitation on the general powers of a legislative character, and restrains only so far as the restriction appears, either by express terms or by necessary inference.

The Act of April 19th, 1856, permitting non-resident aliens to inherit real and personal estate, is constitutional.

The Constitution (Art. I, Sec. 17,) gives the *bona fide* resident alien certain rights, which may be enlarged, but cannot be abridged by the Legislature.

APPEAL from the Fourth District.

The Attorney-General filed in the Fourth District an information, setting forth that David Morgan and Isaac Levick had died seized of certain real estate, situated in the city of San Francisco, without heirs capable of inheriting, and claimed that the estate had escheated to the State.

The Administrator and terre-tenants put in an answer denying the facts stated in the information, and also set forth that there were heirs who, at the time, were non-resident.

Two of the heirs of David Morgan, by their Attorneys in fact, filed a demurrer, on the ground that no cause of action had accrued to the State, inasmuch as five years had not elapsed since they had inherited the same. This demurrer the Court overruled. An answer was then put in, to which a demurrer was interposed, and this was also overruled. From this order the appeal is taken.

*Thomas H. Williams,* Attorney-General, and *B. S. Brooks,* for Appellant. I. The right of the State to succeed to all lands or

other property for which there are no heirs is not derived from the common law. We do not derive it from the feudal system. (4 Kent Com. 423, *et seq.*)

"It is clear by the common law that an alien can take lands by purchase, though not by descent, or in other words, he cannot take by the act of the law, but he may by the act of the party. The principle has been settled in the year books, and has been uniformly recognized as sound law from that time." (11 Hen. IV. 26; 12 Hen. IV. 20; Co. Litt. 2 b.; Jac. Law Dic. "Alien;" *Fairfax, Devisee* v. *Hunter's Lessee,* 7 Cranch, 603; *S. P. Dawson's Lessee* v. *Godfrey,* 4 Cranch, 321; *Craig* v. *Radford,* 3 Wheat. 594; *Orr* v. *Hodgson, et al.* 4 Wheat. 433; 9 Wheat. 354; 11 Wheat. 332; 3 Peters, 126; 6 Peters, 162; *Orr* v. *Hodgson et al.* 4 Wheat. 453; *Blight's Lessee* v. *Rochester,* 7 Wheat. 535; *People* v. *Conklin,* 2 Hill, 71.) If the disability of the alien to inherit depended entirely upon the common law, the disability created by the adoption of the common law would be removed by a subsequent statute introducing a different rule; and such, it is contended, is the effect of the Statute of April 19, 1856. It, therefore, becomes necessary to inquire whether that law is constitutional.

The Constitution, Art. I, Sec. 17, says: "Foreigners who are, or may hereafter become, *bona fide* residents of this State, shall enjoy the same rights in respect to the possession, enjoyment, and inheritance, of property, as native-born citizens."

The Court in the case of *Farrell and Wife* v. *Enright,* (12 Cal. 450,) hold language decisive of the point in question. In that case the intestate died 15th April, 1850. The plaintiff was at that time a non-resident alien. The Court held that the plaintiff could not recover. There the death occurred after the adoption of the common law, and before the passage of the Act of April 19, 1856.

One position assumed by the counsel for the Respondent, is by this decision disposed of—that is, that the Respondents can become *bona fide* residents within the meaning of the Constitution after the descent cast; and it is settled that the capacity to take or hold, depends upon the status of the claimant at the time of the descent cast.

But in order to get a proper construction of this clause of the Constitution, it is necessary to ascertain what was the status of

the alien at the moment of its adoption, and thereby to discover in what status it left the non-resident alien.   The decision which I have above quoted, declares: " The clause of the Constitution cited, only removes the disability of alienage to such foreigners as are *bona fide* residents; it leaves the rights of non-resident foreigners in respect to real property as it exists at the common law."   This is the very point in dispute.   Whether at the time of the adoption of the Constitution, aliens were disabled to inherit, and the Constitution removed an existing disability, or whether, as the Respondent contends, there was then no such disability, and the clause of the Constitution only imposed upon the Legislature a restraint from creating the disability in the expressed cases, and left the rest to the discretion of the Legislature—or whether it " left the rights of non-resident foreigners, in respect to real property, as it exists at the common law."

Whether the common law was in any respect in operation at the time of the adoption of the Constitution, admits of argument. As a rule of decision as to private rights, it was not in force until the adoption of the common law by the Legislature.   But in respect to political rights, it was in force.   In all cases where clauses of the Federal or State Constitutions are construed, constant reference is made to the common law to ascertain the *status* of the subject matter at the time of the adoption of the constitutional provision.   " By the rules of construction, heretofore adopted, this clause negatives any supposed rights which non-resident aliens would otherwise have to inherit."   " We are of opinion that the Constitution expressly prohibits the plaintiffs from inheritance, and that being thus incapacitated, they cannot maintain an action of ejectment, and that their rights have not been enlarged in this respect, by treaty."   (*Siemssen* v. *Bofer*, 6 Cal. 250.)

If the clause in question negatives any supposed rights of nonresident aliens to inherit, and expressly prohibits them, according to the rules of construction heretofore adopted by this Court, it is not in the power of the Legislature to remove the negation or prohibition.   (Sedgwick on Stat. and Con. L. 493.)

The alien has no rights in regard to the real property within a State except such as are expressly given by the State.   His status at the time of the formation of the State is, in this respect,

that he has no rights.  There is no natural property in the soil. (Vattel, Book II, Ch. 9, Sec. 114; Ch. 7, Sec. 79; *Dawson's Lessee* v. *Godfrey*, 4 Cranch, 323; see, also, on this subject, Story's Conflict of Laws, Ch. 12, 4 Ken. Com. 38; Wheaton, 63, 208; 2 Bl. Com. 2, 11, 12.)

The clause of the Constitution, then, does not merely operate to restrain the Legislature from imposing a disability.  The disability already existed, and its effect was to remove it in certain cases, leaving it in full force in the others.  (*Carfield* v. *Coryell*, 4 Wash. C. C. R. 381.)

II.  An Administrator has no estate in the land or any right which he can set up against the claims of the State, when the lands are escheated.  He is not interested in the estate.  If there is any person who claims as heir, he must come forward and set it up.  (Wood's Dig. 425; *Beckett* v. *Selover*, 7 Cal. 215.) It is said that the Administrator is entitled to take possession when the heirs are unknown.  He may lawfully take possession, but when the State comes in to claim the land, his right of possession is at end.  It is said that he has a lien upon the estate for the payment of debts.  If he had any such lien it could only exist as an incident to the debt or debts, and unless there were debts there could be no lien.  It is not alleged in the answer, that there are any debts and *de non apparentibus et de non existentibus eodem est ratio.*  But no such lien exists in the technical sense of the term.  The Administrator has no lien, but rather a power of sale, under the direction of the Court, for certain specific purposes and in certain events, to be judicially determined by the Court.  But if he possessed in ordinary cases, a power of sale, (which the heir is allowed to contest,) it could not be enforced against the State.

*Daniell Rogers*, for Respondent.

The policy of every nation, and more particularly of a commercial nation, is to remove those disabilities to which aliens were subjected by the common law.  The framers of our State Constitution sought by the incorporation of Section 17, in the "Declaration of Rights," the most effectual mode of carrying out this policy, by protecting the rights of the resident alien, and restraining any legislative action in derogation of those rights.

This clause removed the disabilities which attached to the alien by the common law. It placed the resident foreigner on an equality with the citizens as respects the rights of possession, enjoyment, and inheritance of property; it capacitated him to inherit as a citizen. The only prohibition is to prevent the Legislature passing any law which would restrict the rights of aliens. Legislative power is only limited by express prohibitions. (4 Cal. 46; 5 Id. 23; 6 Id. 88.)

Section 17 was simply a declaration of the rights guarantied to "foreigners who are, or may hereafter become, *bona fide* residents of this State." The express mention of resident foreigner cannot be construed into an implied prohibition on the Legislature to pass laws preserving the rights of non-residents. All laws in relation to aliens, and the title by escheat, are peculiarly political in their character, and will be liberally construed. (*People* v. *Folsom,* 5 Cal. 373.)

The Act of April 19th, 1856, gives to the non-resident here, a reasonable time to become a *bona fide* resident, and makes his right to depend upon his coming in the State, and there settling within five years. The law casts the descent upon the alien, being a non-resident, but upon condition. The constitutional provision gives to the resident alien all the rights of inheritance, one of which is the right of transmission; but it fails to give his heirs any reasonable time in which to come and claim the estate. This grant of reasonable time to become *bona fide* residents, is all the Act intends.

The heirs of David Morgan and Isaac Levick became seized of their real estate, and entitled to hold it, upon the condition that they would "come and settle" in this State within five years, and a failure to comply with the condition would terminate their estate, and it would then vest in the State as an escheat. Upon the death of David Morgan and Isaac Levick, the property of which they died seized, either vested in the State of California, as an escheat, or it vested in their heirs, for otherwise the freehold would have been in abeyance. .

It is argued, that the Administrator of this estate has no right to appear in opposition to the State. We contend that under the Act of May 4th, 1852, the Administrator is one who claims an interest in the estate, and as such, he, with the terre-tenants

and the heirs, put in an answer denying the facts stated in the information. The Administrator is the representative of the creditors, and he has a lien upon the estate for the payment of the debts due from the estate to the creditors and the expenses of administration. (*Beckett et al.* v. *Selover,* 7 Cal. 215.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

This is an information of escheat, filed by the Attorney-General, to establish the State's interest in certain real estate to which it is alleged the State has title, in consequence of the alienage of those who would otherwise be entitled.

It is conceded by the Attorney-General, that this claim of the State must fail, if the Act of the Legislature of April 19th, 1856, entitled "An Act relative to Escheated Estates," (Stat. of 1856, 137,) be constitutional. That Act provides:

" SECTION 1. Aliens shall hereafter inherit, and hold by inheritance, real and personal estate, in as full a manner as though they were native-born citizens of this or the United States; *provided,* that no non-resident foreigner, or foreigners, shall hold or enjoy any real estate, situated within the limits of the State of California, five years after the time such non-resident foreigner, or foreigners, shall inherit the same; but in case such non-resident foreigner, or foreigners, do not appear or claim such estate within the period in this section before mentioned, then such estate shall be sold, upon information of the Attorney-General, according to law, and the proceeds deposited in the treasury of said State, for the benefit of such non-resident foreigner, or foreigners, or their legal representatives—to be paid to them by the Treasurer of said State, at any time within five years thereafter, when such non-resident foreigner, or foreigners, or their representatives, shall produce evidence, to the satisfaction of the Treasurer and Controller of State, that such foreigner, or foreigners, are the legal heirs to, and entitled to inherit such estate, which evidence, together with the joint order of the said Treasurer and Controller, shall be placed on file in the office of the Treasurer, and shall be to him a voucher for any payments made by him under the provisions of this Act; and in the event that such non-resident foreigner, or foreigners, do not appear or claim said estate or pro-

ceeds, and produce said evidence within said extended term of five years, then said estate or proceeds shall be and become the property of the State, and shall be by the Treasurer of State placed to the credit of the School Fund.

SEC. 2.    All Acts and parts of Acts conflicting with the provisions of this Act are hereby repealed."

The constitutional provision, Sec. 17, Art. I, provides : " Foreigners who are, or may hereafter become, *bona fide* residents of this State, shall enjoy the same rights in respect to the possession, enjoyment, and inheritance, of property as native-born citizens." This provision was construed, recently, by this Court, in the case of *Farrell* v. *Enright.* It was held in that case, that, to entitle the alien to hold real estate, the descent of which was cast prior to the Act of 1856, such alien must be a resident of the State at the time of the descent. But the Act of 1856 was not involved in the decision.

It is contended by the Appellant that the clause of the Constitution is restrictive as well as enabling; that its terms exclude any other rights or privileges to aliens than those given. We think this view erroneous. The Constitution is not a grant of power or an enabling Act to the Legislature. It is a limitation on the general powers of a legislative character, and restrains only so far as the restriction appears, either by express terms or by necessary inference. (4 Cal. 46; 6 Ind. 88.)

The object of this provision was to secure a certain protection to such resident aliens as might be in the State at the time of a descent. But this short sentence was not designed to comprehend all the law in respect to aliens. The Legislature could not, indeed, abridge this privilege, but it was not disabled from extending it or adding other privileges. It might as well be urged that because the Constitution provided that no law should be passed impairing the obligation of contracts, no legislative regulation could be had; or, because a homestead was exempted from forced sale, there could be no exemption of other property. The alien is secured by the Constitution in this one privilege, but he may be secured by the Legislature in as many more as it chooses to give, provided there is no conflict with any constitutional restrictions upon its power; of which this provision is not one.

The Administrator, having possession of the real estate, could

well set up this defense. The statute denies any present right to the State to take the property; and it is a good answer to one in possession to show a want of power in him who seeks to disturb it.

Judgment affirmed.