15 207
d133 311

## HUMPHREY v. DARLINGTON et al.

1. MISREPRESENTATION BY COUNSEL TO ADVERSE PARTY. A misrepresentation made by counsel in a cause to the adverse party, or the management of the cause for plaintiff by the same counsel after he has been retained generally for the defendant, does not affect the validity of the decree entered therein, where it is not made to appear clearly that the defendant was thereby taken by surprise, and prevented, notwithstanding the exercise of reasonable diligence, to prepare and interpose a defense.

*Appeal from Muscatine District Court.*

WEDNESDAY, OCTOBER 14.

THE material facts are stated in the opinion of the Court.

*Woodward, Hanna and Fitzgerald* for the appellants.

*D. C. Cloud* for the appellee.

Lowe, J.—An equitable action to vacate and set aside a former decree of the Court on the alleged ground of fraud.

Rightly to dispose of and make intelligible the points made and discussed, a detailed statement of the pleadings and evidence is not demanded. In January, 1846, the defendant Darlington filed his bill in equity for the specific performance of a contract under which the plaintiff Humphrey had agreed to convey to him a certain tract of land, as alleged, for work done and material supplied in the building of a barn. This suit remained upon the calender of the Court until November, 1851, when a decree was taken by default against the said Humphrey, and was afterwards affirmed in the Supreme Court, at the November Term, 1852.

Three facts or circumstances are stated as constituting the fraud charged:

*First.* The insufficiency of the original bill, and especially the allowing of a decree by default without proof of the facts therein stated.

*Second.* That William G. Woodward, counsel for Darlington in the former suit, had been previously retained by Humphrey, and for that reason had no right to bring the suit.

*Third.* That the said Humphrey, in the first suit, had been deceived and thrown off his guard by the declarations and promises of the said Woodward, counsel for Darlington, in this, that at an interview between them in the year 1849, said Woodward assured Humphrey, that the suit would not be pressed, most likely would be dismissed; that he need not employ counsel, or answer the bill; that if the case should go on, he, Humphrey, should be notified in time to make his defense; that he, relying upon these promises and assurances, gave no further attention to the matter, until after the decree was entered; that he never was notified that said suit would go on; that the default was taken without

his knowledge or consent, and that he was surprised and greatly injured thereby.

These several acts, matters and things, receive a very emphatic denial in the answers of the defendants.

In regard to the want of equity in the bill of the first suit, and the omission of the Court to require proof of the facts stated at the time the default was taken, if true, as alleged, would not constitute any element of fraud, but at most could only be considered as questions of errors, and as such they were in fact passed upon by this Court on an appeal, at its November Term, 1852.

As it respects the second ground of fraud, to wit, the imputed bad faith of the defendant Woodward, in bringing the former suit for Darlington after accepting a general retainer from Humphrey in all his legal business, the charge is not sustained, in our opinion, by the weight of the evidence. This we would attempt to show from an examination of the same, if we did not feel that we were relieved from doing so, because of the fact that the evidence shows that Humphrey very fully and repeatedly recognized the said Woodward as the attorney of Darlington, and as such negotiated with him in regard to the conduct of the suit. .

How this act of malfeasance could infect the judgment with fraud, or with any other legal infirmity is not readily perceived. Humphrey had full notice of the fact from the beginning, and acted with reference to it. He was not therefore surprised or deceived, nor prevented from employing other counsel (which in fact he did), nor from making preparation for, or setting up a defense, if any he had, in the suit which was so long pending. To our minds it is most difficult to perceive any natural or necessary connection between fraud charged to have been committed in obtaining the judgment in question and the infraction of a private contract between other parties, entered into sometime before said suit was commenced or known to have

been contemplated. We must be excused from accepting an inference so remote and improbable.

In considering the third or last ground of this alleged fraud, it will be remarked, that it is not claimed to be founded upon anything done or said by defendant Darlington, who was the plaintiff in the former suit, or upon any act of the Court, but rests alone for its basis upon certain representations, said to have been made by the defendant Woodward, who simply acted as the attorney for Darlington. We have already indicated what these representations were, and while they are in the main sustained and testified to, by the plaintiff Humphrey and his two sons, James and Andrew, they are contradicted by Woodward in his testimony, who also explained the reason why said suit was pending so long upon the docket, awaiting, peradventure for the termination of another suit, involving the title to the same lands; and stating some other facts and circumstances connected with the two suits, which to some extent would account perhaps for the discrepancy in their statements, or at least furnish a possible reason why his declarations or representations were misunderstood by Humphrey and his two sons.

Without attempting to reconcile this testimony, or determining the question, which is entitled to the greater weight, we suppose that unless these representations had the effect in truth to mislead the plaintiff, and to throw him off his guard, and thus deprived him of the benefit of an attorney, or of making the defense which he otherwise would have done, no fraud in this fact was perpetrated.

Now, aside from the testimony of these witnessess, we discover other facts in the record, uncontradicted and unexplained, which are wholly irreconcilable with the idea that Humphrey was deceived or mislead, or put off his guard, as he pretends, by such representations, even if they were in fact made. What are these evidential facts? In the first

place, we have already stated that the suit for a specific performance was commenced in January, 1846, and ended in November, 1851, being nearly six years.   This long delay in the final hearing and disposition of the cause is reasonably explained upon the ground that the land in controversy had been sold at sheriff's sale, upon execution against Humphrey, that the defendant, James Cattell bought the same at said sale; that Humphrey within the limited time by law, redeemed the same, by paying the money to Wm. G. Woodward, whom he understood to be Cattell's lawyer; his relation as attorney and authority to receive the money, was denied by Cattell, who refused to accept the same, or admit the redemption.   Woodward filed a bill of interpleader against these parties to settle the question as to whose money he held, and whether there was a legal redemption.   During its pendency it was not deemed important to press the Darlington suit for a specific performance, for the reason it was understood by the parties that if a redemption had not been perfected the land was Cattell's, and the Darlington suit would fall to the ground.   But the interpleader ended in favor of Humphrey, and the other suit accordingly progressed.

Now let us see what the record entries say in relation to the acts and conduct of the parties in this suit.   During each of the three first years of the pendency of said cause, to wit, at the May Term, 1846, the June Term, 1847, and the October Term, 1848, rules were taken on the said Humphrey to plead, answer or demur.   These rules were not complied with, nor any adequate explanation given for the failure.

During all this time Humphrey admits that S. C. Hastings, Esq., was his attorney and that he had charged him to keep his eye upon the case that no advantage should be taken of him.   In the spring of 1849, Hastings left the State for California, soon after which Humphrey claims that he called upon Woodward and informed him of that fact, and desired

to know what he (Woodward) proposed to do with the suit, and whether it would be necessary for him to employ other counsel. He testifies, in substance, that Woodward at this interview promised to dismiss the suit; that he need not employ counsel; that Darlington expected nothing from it; that he relied upon these pledges, gave no further attention to the subject till after he had learned a decree had been taken against him; that in consequence of these declarations and representations, he had been deprived of a hearing and an opportunity of making a defense, &c. These statements, if true and unaffected by any fault or negligence of the plaintiff, would afford ground of relief. But unfortunately for him he is estopped from asserting and we from accepting their truth by what the record discloses. It shows that more than eighteen months after this conversation should have occurred, to wit, at the November Term, 1850, the cause was continued by consent of parties, proving conclusively thereby that the plaintiff was in Court at that time by himself or counsel; that he did know the suit had not been dismissed; that he was paying attention to the same, and that he did not rely upon the representations of Woodward.

This was about the time the interpleader controversy was disposed of in a manner making it necessary for the Darlington suit to go on. But it was continued till the November Term, 1851, at the hearing thereof the evidence shows incontestably that Stephen Whicher, Esq., appeared for Humphrey, and objected to a judgment by default. Afterward in behalf of Humphrey, he took the case by appeal to the Supreme Court, and argued it there for the appellant. It is by no means probable that Whicher did all this without the knowledge or consent of Humphrey. Indeed, the latter, in his long deposition, does not pretend to deny or question Whicher's authority to act as his attorney, nor does he give any explanation of the same. We are compelled, therefore, to conclude that Humphrey was in Court by

his counsel the last three, as he had been the first three years of this controversy; that he was not deprived of a hearing or put off his guard by any statement made to him by Woodward; that he was cognizant of the pendency of the suit in legal contemplation up to the last hour; that his want of preparation and failure to defend was the result of his own laches; that in all probability he could have had the default opened or the cause continued for the same showing that is made in this proceeding for relief were the facts true, if the attempt had been made. But this was not done, and the persistent disregard of the several rules taken against the defendant to answer, without explaining or giving any satisfactory excuse therefor, present an example of negligence too gross to be followed by the relief asked for, in his case. We have recently held in the case of *Johnson* v. *Lyon et al.*, 14 Iowa, 431; that a court of equity would not interfere with a judgment at law, unless the evidence should make it appear clearly that such judgment was fraudulently and wrongfully obtained, without negligence or fault on the part of the judgment defendant. Such evidently was not the case before us, and the same should be dismissed at the cost of plaintiff, which is accordingly ordered.

Reversed.