## PURCZELL v. SMIDT.

### I. Per COLE, J.

1. **Aliens:** RIGHTS AT COMMON LAW. At common law an alien cannot acquire by purchase and convey to a vendee a good title to real estate.

2. —— CONSTITUTIONAL LAW. Article 1, section 22, Constitution of 1857, securing certain rights as to real estate therein expressed to certain classes of foreigners, does not restrict the powers of the legislature to confer the same rights upon other classes; and chapter 100 of the Revision of 1860 is not inconsistent with the Constitution.

> *Argu.* 1. In the construction of the United States Constitution it is held that the national legislature can exercise only such powers as are expressly granted and such as are necessarily incident to the granted powers.
>
> 2. In the construction of State Constitutions it is held that the legislature may exercise all rightful legislative powers which are not expressly prohibited or necessarily included in the prohibited powers.

3. —— STATUTE CONSTRUED. Section 1. chapter 65, Laws 1858 (Rev. 1860, § 2488), confers upon aliens resident in the United States who have declared their intention to become citizens, and upon alien residents of this State, the right to acquire real estate by descent, or by purchase (by bargain and sale); and is prospective only.

—— SEC. 2 (Rev., § 2489) confers upon every alien, wherever resident, the right, after the taking effect of the act to acquire real estate by devise or descent, but not by purchase.

—— SEC. 3 (Rev., § 4490) confers upon every alien, wherever resident, the right to acquire real estate by purchase (by bargain and sale), from any person holding an absolute title, upon the condition that he in good faith sells the same within ten years, to a person capable of holding an absolute title. When the title is cast by descent from such alien purchaser, the heirs take his title subject to the same conditions. This section is retrospective.

—— SEC. 4 (Rev., § 2491) confers upon alien married women, wherever resident, whose husbands at the time of their decease were capable of holding an absolute title to lands, the right of dower, the same as residents. This section is prospective only.

—— SEC. 5 (Rev., § 2492) confers (or declares what was, in effect, the [common law right) upon all aliens, wherever resident, the right, after the taking effect of this act, to acquire personal property, by descent or distribution, the same as citizens.

—— SEC. 6 (Rev., § 2493) confers upon aliens, wherever they may reside, the right to take or acquire property, by bequest or devise, upon condition, in case of non-residents, that they shall become residents of this State. This provision is retrospective as well as prospective.

—— That this construction being inconsistent with *Krogan* v. *Kinney* (15 Iowa, 242), and *Rheim* v. *Robbins* (20 Id., 45), the same should be overruled.

## II. Per DILLON, J.

—— DILLON, J., does not concur in the reasoning of the opinions of COLE, J., in this case, nor in that of the majority in *Stemple* v. *Herminghouser*, as to the construction of the Constitution; and holds that the Constitution confers upon resident foreigners the right to *transmit*, as well as to acquire, by descent.

## III. Per LOWE, Ch. J., and WRIGHT, J.

—— LOWE, Ch. J., and WRIGHT, J., adhere to the construction of the statute given in the cases of *Krogan* v. *Kinney* and *Rheim* v. *Robbins*, *supra*, and dissent from the opinion of COLE, J.

*Appeal from Scott District Court.*

· FRIDAY, DECEMBER 21.

THIS is a controversy submitted, without action, upon an agreed statement of facts, under chapter 131 of the

Revision.   The plaintiff claims to recover an installment of interest, due upon a promissory note given for real estate.   It is agreed that the plaintiff acquired all the title he held to said real estate by virtue of a conveyance from non-resident aliens, who had never been in Iowa or the United States; and that the non-resident alien grantors of plaintiff acquired the title (if they were capable of taking and holding the same) by purchase in 1859, and conveyed the same to plaintiff in 1864.   The only question made is as to the capacity of such non-resident aliens to take and convey a valid title to real estate in this State.   If they have such capacity under the law of 1858 (Rev., §§ 2488–2493), then it is agreed that the plaintiff is entitled to recover in this controversy, notwithstanding there may be certain technical defects in his title, as set out in the agreed statement of facts; but if such non-resident aliens have not such capacity, then the judgment must be for defendant.   The agreed statement is very much in detail, and covers some twelve pages of the transcript, but it is believed that the foregoing embodies every essential fact necessary to a complete apprehension and intelligible determination of the question in controversy.

The District Court rendered judgment for the defendant, and the plaintiff appeals.

*H. R. & E. Claussen* for the appellant.

The defendant submitted the cause in person without argument.

COLE, J.—The ultimate question involved in this case has heretofore been presented to, and adjudicated by this court in three different cases: *Stemple* v. *Herminghouser*, 3 G. Greene, 408; *Krogan et al.* v. *Kinney et al.*, 15 Iowa, 242; and *Rheim et al.* v. *Robbins*, 20 Iowa, 45.   The first

of these cases was decided prior to the passage of the "Act respecting aliens" which took effect March 24, 1858 : and the last two cases involved the construction of that act. We are now asked to review the construction given to the act of 1858 by the decisions in those cases, or, at all events, to consider the question as *res integra*, which I proceed to do.

I. It is not controverted that at the common law an alien has not the capacity to acquire real estate by pur-

1. ALIENS: rights at common law.

chase, so as to convey a good title to his vendee. That is to say, he may purchase lands, but they may be forfeited to the State, upon inquest of office found ; and if he dies before such proceeding, the inheritance escheats; and if he sells and conveys to a citizen even, the right of forfeiture is not barred. 2 Kent. Com., 61. If, therefore, an alien has the capacity to acquire and convey an indefeasible title to real estate in this State, he must derive the same from some statute. There is no claim or pretense that there is any other statute conferring this capacity than the act of 1858.

II. A question as to the constitutionality of the act of 1858 is submitted, and it is proper to dispose of that

2. — constitutional law.

before proceeding to the consideration of the construction of the statute.

Article 1, section 22 of our present Constitution is the same as our first Constitution was, and is as follows :

"Foreigners, who are or may hereafter become residents of this State, shall enjoy the same rights in respect to the possession, enjoyment and descent of property as native-born citizens."

The particular question made is, whether this clause is a restriction upon the power of the legislature for extending the same privileges to other foreigners than those named in the clause, to wit : non-resident foreigners, or whether it simply enables the classes named to enjoy the

rights specified and limits the power of the legislature to exclude them. A bare recurrence to the principles of constitutional construction will afford an unerring answer. In the construction of the United States Constitution, which is a grant of powers, it is a rule that the national legislature can only exercise such powers as are therein expressly granted and such as may be necessary to the complete exercise of the granted powers. But, in the construction of a State Constitution, it is a rule that the State legislature may exercise all rightful legislative powers which are not expressly prohibited or necessarily included in the prohibited powers.

Bearing in mind these rules of construction and that the instrument to be construed is a State Constitution, there is no difficulty in determining the constitutionality of the law of 1858. For the Constitution having provided that resident foreigners shall enjoy certain rights, it becomes a limit or prohibition upon the legislative power to deprive such foreigners of those rights but is not a restriction upon the legislature as to the granting of like rights or privileges to other foreigners than those named. In other words, the Constitution itself confers upon resident foreigners certain rights, and restrains the legislature from interfering with them, but it contains no restrictions as to the power of the legislature to confer the same or other rights upon non-resident foreigners.

The act of 1858, which simply extends the "rights in respect to the possession, enjoyment and descent of property to others than those named in the Constitution is, therefore, constitutional, since there is no prohibition as to the exercise of such power. *People* v. *Rogers*, 13 Cal., 159.

If this constitutional provision should even be held to confer upon the resident alien the power and right to *transmit* his property by descent, as well as the right

to *acquire* by descent, the same as native born citizens, such holding would not relieve the appellant nor accomplish the result claimed. Since, by the common law in force and not inconsistent with this constitutional provision, the native born citizen could not transmit his property by descent to an alien, because an alien could not have inheritable blood; and hence, if the Constitution conferred upon the resident aliens the same right of transmitting property by descent as native born citizens have, even such construction would not enable them to transmit their property by descent to aliens, or to those whose right to inherit was derived only through aliens. *Stemple* v. *Herminghouser, ante,* and authorities there cited.

III. The act of 1858 contains six sections, and it is now embodied in the Revision of 1860, sections 2488 <sub>3.——statute construed.</sub> to 2493, inclusive. Section 2488, being section one of the act, is as follows:

" That all aliens residing in the United States who shall have made a declaration of their intentions to become citizens of the United States, by taking the oath required by law, and all aliens residents of this State shall be capable of acquiring real estate in this State by descent or purchase, and of holding and alienating the same, and shall incur the like duties and liabilities in relation thereto as if they were citizens of the United States."

This section provides for two classes of foreigners or aliens, to wit: first, those who reside in and who have made their declaration of intention to become citizens of the United States; and, second, those who are residents of this State. The Constitution had provided for the second of these classes only. This section is, therefore, a re-affirmance of the Constitution, or the putting in legislative form the grant of certain rights to a class of aliens, to wit, residents of this State, and the granting of the

same rights, by the rightful exercise of legislative power, to another class, to wit, residents· of the United States who have declared their intentions to become citizens.

Having ascertained the classes of aliens provided for by this section, let us proceed to ascertain what rights or privileges are conferred or granted by it. The language is, that they "shall be capable of acquiring real estate in this State by *descent* or *purchase*."

Purchase, in its most enlarged and technical sense, signifies the lawful acquisition of real estate by any means whatever, except by descent. In its more limited sense, purchase is applied only to such acquisitions of lands as are obtained by way of bargain and·sale for money, or some other valuable consideration. In common parlance, purchase signifies the buying of real estate and of goods and chattels. 2 Bl. Com., 241 ; · Cruise Dig., tit. 30, §§ 1 to 4; 1 Dall. 20; Bouv. Law Dic., tit. "Purchase." It is clear that the legislature used the word "purchase" in some *one*, and not in *all* these significations ; ·and in construing the act it becomes a duty and necessity to determine in which of these senses or significations the word was used.

In view of the fact, that the next section provides for aliens acquiring real estate by *devise*, and the section following provides for more limited rights to aliens acquiring real estate by *purchase ;* and also, in view of the fact, that in order to give to every section some practical effect and application, it·is necessary to limit the signification of the language used in the act, we feel authorized in giving to the word "purchase," as used in this section, the more limited or common signification, to wit, that of acquisition by bargain and sale for a consideration. In thus fixing the sense in which the word is used in this section, and·limiting it to its common· signification, there is no infringement upon the rights granted by the Con-

stitution; for, even if it should be held that the "possession and enjoyment" specified in the Constitution, included the right and capacity to acquire real estate by purchase in its most enlarged and technical sense, we shall see, in the further progress of our interpretation of the act, that sections one and two together, cover the most extended meaning possible to be given to the language of the Constitution. By thus giving to the word "purchase," as used in this section, its common signification, we are enabled to maintain a consistency as to its meaning, when we come to the same word in section three of the act, where, beyond doubt, it is used in that sense.

Section 2489 of the Revision, which is section two of the act, is as follows:

"It shall be lawful for every alien who, except for his alienage, would be capable of acquiring real estate by devise or descent from any person hereafter dying, capable, at the time of the death, of holding real estate in this State, to acquire real estate in this State by devise or descent, from any person as aforesaid, hereafter dying, and of holding and alienating the same, and shall incur the like duties and liabilities in relation thereto as if they were citizens of the United States."

Following the topics of interpretation in the same order as done in the first section, we proceed to inquire, first, as to the class or classes of aliens included in the language of this section, and to which it applies. The words "who, except for his alienage, would be capable of acquiring real estate by devise or descent from any person hereafter dying, capable, at the time of the death, of holding real estate in this State," tend to becloud the perspicuity of the section, and add to the difficulty of its interpretation. The effect of these words may be twofold, to wit: to limit the capacity of aliens in the rights conferred by the capacity

of citizens in the same rights ; so that, if, by any penal or criminal statute then in force, or which might thereafter be enacted, a penalty was or should be annexed, whereby the right or capacity of a citizen to acquire or hold real estate, should be taken away or forfeited upon a conviction, the like forfeiture could be enforced against an alien ; and the further effect of limiting the application of the section to the " persons *hereafter* dying," by such express language as would completely preclude a construction giving to the section a retroactive effect.

We say, these words *may* have been inserted for the purpose of effectuating the two objects named. But it is not now necessary to positively determine the effect of the words quoted ; for, whatever may be their independent effect, it is clear beyond controversy (and is conceded by all the counsel arguing this and the other causes involving the same question), that these words have no bearing whatever in determining the *class of ·aliens* to which the section applies, nor in determining the *rights conferred* by it.

It is in determining the class of aliens included in the words " every alien," that the chief difficulty arises in the construction of the act as a whole. In the cases of *Krogan* v. *Kinney* and *Rheim* v. *Robbins, supra,* it was held that these words referred to a class of aliens other than the two classes specified in the first section, and which did not include them, to wit : aliens resident in the United States (other than Iowa), and who had not made a declaration of their intention to become citizens of the United States. This construction was based upon the theory that if the full breadth of meaning of the words " every alien " was given to them, so as to include all aliens everywhere, it would, necessarily, include the two classes specified in the first section, and, therefore, would render the first section completely nugatory and meaningless ;

and as such construction would violate a fundamental rule of statutory interpretation, to wit : that effect is to be given to every part of a statute, it was rejected, and the language " every alien " was held to mean every alien residing in the United States who had not declared his intention to become a citizen.

Upon a full and careful review of the whole statute and a critical re-examination of its every sentence, and the possibility of giving to each and every part of it some practical effect and operation (as hereinafter shown), and at the same time to give to the words " every alien " their full scope of meaning, so as to include every alien in the world, I have concluded, and so determine for myself, that such limitation of the plain, obvious and sole meaning of the words " every alien " is purely arbitrary and without sanction in any recognized rule of construction of statutes, and that the class of aliens to which the second section refers is *every alien* in the broad universe, without regard to his birthplace or residence.

While this construction involves the necessity of limiting and restraining other words used in the statute, yet it is more in accordance with the strict rules of interpretation of statutes, than that given in *Rheim* v. *Robbins*, and has the further merit of resting upon the higher plane of humanity as regarded and treated by modern legislation in other States, by our recent national legislative and constitutional reforms, and by the progress of jurisprudence generally; that of regarding man *as man* without reference to his birth, nationality, race or color. Michigan Rev. Stat. (1838), 265–6; Wisconsin Rev. Stat. (1858), ch. 89, §§ 21, 35–6; Massachusetts Gen. Stat. (pub. 1860), p. 473; Ohio Stat. (pub. Apr. 18th, 1854), ch. 3, p. 40; Illinois Stat., vol. 2, p. 815; Pennsylvania Stat. (by Dunlap, 1853). See also statutes of New York, Maryland, South Carolina, Delaware, Missouri, Vir-

ginia, Kentucky, New Jersey, Indiana, and perhaps other States, 2 Kent's Com., 69 and 70, and notes.

Secondly, as to the privileges or rights granted by this section. It is made lawful for every alien " to acquire real estate by *devise* or *descent*." By the first section, as we have seen, the two classes of aliens therein named were rendered capable of acquiring real estate by *descent* or *purchase;* and the word purchase, we found to mean the requisition by bargain and sale for a consideration, and that it did not therefore include acquisition by *devise.* So that, by section one, the two classes of aliens therein named were not rendered capable of acquiring real estate by *devise.* Now, by section two, the words " every alien " include the two classes named in section one (and also others), and by this section those classes are clothed with an additional right, to wit: that of acquiring real estate by *devise.* But the class named in section two, every alien, is not rendered capable of acquiring real estate by *purchase.* Hence, section one, by which certain rights are conferred upon two classes of aliens, is not at all abrogated or rendered nugatory by construing the words " every alien " in section two, to include the two classes named in section one; since, by section two, additional rights are conferred on those classes; and their rights, as given by section one, are still exclusive to them. This section, it will be observed, is wholly prospective in its operations, and does not purport to have any retroactive effect.

" SEC. 2490 (§ 3). It shall be lawful for every alien who, were it not for his alienage, would be capable of acquiring real estate by purchase in this State, to purchase real estate in this State from any person capable at the time of holding an absolute title to real estate in this State ; *provided*, that such alien shall in good faith, sell and convey the same within ten years from the date of said purchase, or taking effect of this act, to some person

capable at the time of acquiring and holding an absolute title to real estate under the laws of this State, other than by virtue of this section ; *provided, further,* that all such aliens who may have, previous to the taking effect of this act, acquired any real estate by gift, devise, descent or purchase, may hold the same according to the provisions of this act."

1. As to the class of aliens provided for by this section — every alien — it is clear that the words have a meaning identical with the same words in the preceding section ; and, following the construction given to them in the discussion of that section, we hold that the language is used in its broadest signification, and applies to every alien in the universe. So far as the exception contained in the enacting clause is concerned, to wit : " who, were it not for his alienage, would be capable of acquiring real estate by purchase in this State," it bears the same relation to this section and has the same effect, as that first specified in the discussion of the similar exception contained in the second section, *ante..*

2. As to the privilege granted or right conferred by this section, it is simply the right to purchase real estate in this State, from any person capable at the time of holding an absolute title to real estate in this State. The word " purchase " as used in this section has the same limited and common meaning as in section one, and does not therefore include devise.

The right conferred, is that of acquiring real estate by bargain and sale for a consideration. And this right has two limitations : one, that the purchase shall be from a person capable of holding an absolute title to real estate, and who does not hold it by virtue of this section ; and the other, that such alien purchaser shall in good faith sell and convey the same within ten years from the date of his purchase, or the taking effect of the act. The

second proviso of this section expressly makes the same retroactive.

There is one fact connected with the plaintiff's title which is omitted in the statement of the case preceding this opinion. It is this, that the plaintiff's grantors are the non-resident alien heirs at law of the non-resident alien who purchased the real estate in 1859. And I hold, that while by the express terms of the act, a non-resident alien could not acquire a good and indefeasable title by purchase from such non-resident alien owner, yet when the estate is cast by operation of law upon the heirs of such owner, they take a valid and indefeasable title thereto, subject however to the necessity of selling and conveying the same in good faith within ten years from the date of the purchase by their ancestors to some person capable of acquiring and holding an absolute title thereto, otherwise than by virtue of this section.

"SEC. 2491 (§ 4). Every married woman whose husband hereafter dies, capable at the time of the death of acquiring and holding an absolute title to real estate in this State, though she be an alien, shall be entitled to the same rights of dower in her husband's lands as if she were a resident of this State."

The class of persons included within the language and operation of this section, is every married woman, regardless of her being an alien or the place of her marriage or residence or other fact. The right conferred is that of taking dower in her deceased husband's lands, the same as if she were a resident of this State. It follows, therefore, that whatever would bar dower as to a resident citizen would equally bar it as to the alien. But there is limitation contained in the language of this section as to this right of dower in the deceased husband's lands, and it is that the husband shall be capable at the time of his

death of acquiring and holding an absolute title to real estate in this State. The widow of a non-resident alien, who had acquired title to lands by purchase, under the provision of section three of this act, would not by the terms of this section be entitled to dower in such lands. It only remains to notice, in connection with this section, that by its express language it only applies to married women whose husbands deceased or shall decease after the taking effect of this act; it is not retroactive.

" SEC. 2492 (§ 5). All aliens who, except for their alienage, would be capable of acquiring personal property as a distributive share of an intestate estate in this State, shall be capable of taking the same, and incur the like duties and liabilities in relation thereto as if they were citizens of the United States."

The words " all aliens," as used in this section, refer to and include the same class of aliens as the words " every alien " in section two; that is, every alien in the broad universe. The words " who, except for their alienage, would be capable of acquiring personal property as a distributive share of an intestate estate," are entitled to the same construction, and were designed to effectuate the same purpose as that first specified in the discussion of the similar language in section two, *ante*. The right conferred or recognized by this section is that of acquiring personal property by descent; that is, of taking a distributive share of an intestate estate from the administrator, by virtue of relationship to the intestate, although it is probably declarative of the common law of itself. This section is prospective only in its operation. It is not retroactive, because the language of the section does not necessarily make it so; and it is a rule of construction that the intention of the legislature must be clearly expressed upon the face of the enactment, in order to

justify a court in giving it, by force of its own operation, a retroactive effect. *Bartruff* v. *Remey*, 15 Iowa, 257. The rule of construction of a statute is not essentially different, whether the statute is declarative or enactive.

"Sec. 2493 (§ 6). If any person being a citizen of this State at the time of his decease, shall have made a will bequeathing his property to a person who, at the time of making such bequest, was an alien non-resident, but who, subsequently to the making of such bequest, became a resident, such alien shall be capable in law of becoming a devisee of such property, as well as if he was a resident of this State at the time of making such devise."

The language of this section affords a tolerable justification to the criticism of all modern legislation, sometimes indulged in by the profession, to the effect that legislatures so seldom comprehend the meaning of their enactments, that they ought not to be presumed by courts to have intended any thing by them. A mere reading of this section must convince a lawyer that any effort at its construction by a court must be but little less than judicial legislation. It is a mingling interchangeably of words in the present and past tenses, and of words applicable alone to personal property with those only applicable to real property. *Bequest* is applied to a gift by will of a legacy, that is, of personal property; *devise* is properly a gift by testament of real property. But these words are used interchangeably in this section, and which is the proper meaning to be given to them is not discoverable from the other words used in connection with them or their relation to such other words.

Following the order of interpretation heretofore pursued in this opinion, we proceed to ascertain the class or classes of persons included in the language of this section. Since the section contains the two terms of "bequest"

Purczell v. Smidt.

and "devise," in relation to the same subject-matter, it will not be a wholly unauthorized liberality of construction to hold that each term is used with such a breadth of meaning as to include both devise and bequest. That is to say, that *bequest*, as used in this section, includes a disposition by will of real as well as personal property; and *devise* includes a like disposition of personal as well as real property. Giving to these words the broad and liberal signification indicated, it follows that the classes of persons upon whom this section confers its rights are both alien non-resident and resident legatees and devisees of citizens of this State. Whether the word "citizen" is here used in its strict and technical sense, or as being synonymous with inhabitant, may be a question.

2. As to the rights or privileges conferred, it is the right to take property as the devisee or legatee of a citizen of this State, and this right is given although such devisee or legatee was a non-resident alien at the time of the decease of the testator, provided such non-resident alien shall become a resident. But it is said that the right to take real estate by devise was conferred by section two upon every alien, without regard to his residence and without any requirement as to such devisee becoming subsequently a resident. This is true. But in the discussion of section two, we found that it was wholly prospective in its operation, and that it could not be held to be retroactive in its effects. This section, however, is clearly retroactive in its purpose and operation, as a reference to its language will show. It provides that if any person being a citizen of this State at the time of his decease *shall have made* a will bequeathing his property to a person who at the time of making such bequest was an alien non-resident, but who subsequently to the making of such bequest *became* a resident, &c. A statute speaks as of the day it takes effect, and this section then spoke

of a deceased who shall have made a will before the enact-
ment. By this construction full effect is given to section
six, perfectly consistent with and in furtherance of the
general purpose of the other sections. It gives to devisees
of real estate, who became such before the taking effect of
the act, the right to take such devises upon condition that
such devisees become residents; and to this extent this
section enlarges the right conferred by section two. And
this section also gives to, or declares and recognizes the
common law right of, legatees of personal property who
became such both before and after the taking effect of
the act, the right to take and hold such legacies upon the
like condition of becoming residents. Why a legislature
should confer the right upon a non-resident alien to take
a devise of *real estate* without the necessity of becoming a
resident, and should seek to require a legatee of *personal
property* to become a resident, or why the right to take
was limited to bequests and devises by "*citizens*," if used
in its strict sense, is not obvious to or even discoverable
by us. Yet the legislature, in the exercise of its rightful
power, has so declared; and, as it is our duty only to ad-
minister the law and not to make it, we are simply content
with its performance in the exercise of our best judgment.
With the motives for its enactment, further than is mani-
fested by the language it contains, we have nothing to do.

To recapitulate succinctly the construction given to the
entire act, it is as follows:

Section 2488 (1) confers upon aliens resident in the
United States, who have declared their intention to
become citizens, and upon residents of this State, the
right to acquire real estate by descent or purchase, by
bargain and sale. This section is prospective only.

Section 2489 (2) confers upon every alien, wherever resi-
dent, the right, after the taking effect of the act, to acquire
real estate by devise or descent, but not by purchase.

Section 2490 (3) confers upon every alien, wherever resident, the right to acquire real estate by purchase (bargain and sale) from any person holding an absolute title, upon condition that he in good faith sells the same within ten years, to a person capable of holding an absolute title. Where the title is cast by descent from such alien purchaser, the heirs take his title subject to the same conditions. This section is retrospective.

Section 2491 (4) confers upon alien married women, wherever resident, whose husbands, at the time of their decease, were capable of holding an absolute title to lands, the right of dower, the same as residents. · This section is prospective only.

Section 2492 (5) confers (or declares what was in effect but the common law right) upon all aliens, wherever resident, the right, after the taking effect of the act, to acquire personal property by descent or distribution the same as citizens.

Section 2493 (6) confers upon aliens, wherever they may reside, the right to take or acquire property by bequest or devise, upon condition, in case of non-residents, that they shall become residents of this State. This section applies to bequests and devises as well before as after the taking effect of the act.

By this construction every section and sentence of the act is made operative and accomplishes a purpose, either by its application to an additional class of persons, or in the conferring of new and substantive rights, or extending their operation restrospectively. The omission of any section or sentence would mar the completeness of the act. Whenever the meaning of any word is restrained, it is nevertheless given such signification as is accorded to it in common parlance; and when the meaning of any word is extended or enlarged, it is still limited within the bounds of that signification awarded to it even in legal

writing.   Such restrained or extended significations were necessary in order, to give to every part of the act some practical operation, and are fully justified by the fundamental rules of statutory interpretation.

After the most careful and patient investigation of all the legislation and adjudications bearing upon the subject, within my reach, and the most thorough and critical examination of the statute, I have been lead to adopt the construction herein given to the act of 1858.   While I have not given, at length, all the reasons which have prompted me to the conclusion stated, nor, in every instance, satisfied myself, beyond a doubt, as to its perfect correctness, I have, nevertheless, stated my reasons as fully as our space in the reports would justify, and have given a reasonable and liberal construction to the act, which gives force and effect to every part of it, and makes it accomplish a purpose, alike honorable to the State, liberal and just to the large classes of resident aliens, who constitute an important element in our national development and prosperity, and with whom the desire to transmit their property to their kindred, whether resident in this or their fatherland, is as deeply implanted by nature as in our own born citizens, and a construction consistent with the language and purpose of the act, and, also, in accord with the progress of the age.   I confess to the obligations of obedience, in its strongest legitimate sense, to the doctrine of *stare decisis;* and I have the consent of my own mind to disturb, or, in the least, unsettle the adjudications referred to, only upon the clearest conviction of my judgment, after a most thorough examination and consideration of the entire act, that the construction before given to the words " every alien," was not only purely arbitrary, but wholly unauthorized by any legal rule of construction, or any recognized principle of statutory interpretation, and is

Purczell v. Smidt.

effectuating gross injustice to the parties within the operation of the rule, as well as doing violence to the principles of natural affection, with which the Creator has endowed all mankind. I have, therefore, felt bound to override. the doctrine of *stare decisis* for once, at least, and to adopt the construction herein given. ·

This construction is at variance with that given in the cases of *Krogan* v. *Kinney* and *Rheim* v. *Robbins*, and, in my opinion, those cases should be overruled, and the judgment of the District Court in this case

Reversed.

DILLON, J., concurs in the conclusion of reversal reached by the foregoing opinion, but does not wish to be bound by the reasoning employed, nor by the construction given of the entire statute in detail; nor does he wish to be committed to the construction given by majority opinion in *Stemple* v. *Herminghouser*, to the constitutional provision, art. 1, sec. 22; and holds that the Constitution confers upon resident foreigners the right to *transmit* as well as to *acquire* by descent.

LOWE, Ch. J., and WRIGHT, J., adhere to the construction of the statute as given in the cases of *Krogan* v. *Kinney* and *Rheim* v. *Robbins*. They indorse·the reasoning in those cases ·and the construction given to the statute therein, and dissent *toto cœlo* from the foregoing opinion.

This division of opinion would result in the order that the judgment of the District Court stand affirmed; but, in view of the peculiar facts of this case, we are agreed in ordering that the judgment of the District Court be set aside, and the plaintiff's suit or claim be dismissed without prejudice.