## McCONVILLE v. HOWELL and others.[1]

*(Circuit Court, D. Colorado. June 27, 1883.)*

1. NON-RESIDENT ALIENS.
    Under the statute of Colorado non-resident aliens may own, inherit, and convey property, real or personal, the same as citizens and residents.

2. CONTRACT OF SALE—SPECIFIC PERFORMANCE.
    A contract for the purchase and sale of an interest in mining property, at a price named therein, in which contract is the following clause : "Provided, always, in the event of such failure to complete such purchase, he, (the purchaser,) his heirs and assigns, upon the delivery of possession of said lands and mining premises as aforesaid to the parties of the first part, their heirs and assigns, shall in nowise be held responsible for the payment of said purchase money." *Held*, that upon refusal to redeliver the property to the sellers on demand, the latter had the right to treat the contract as a sale, and proceed to enforce its specific performance in equity.

In Equity.

*N. F. Cleary* and *G. G. Symes*, for plaintiffs.

*George, Maxwell & Phelps* and *Markham, Patterson & Thomas*, for defendants.

McCRARY, J., *(orally.)* In the case of *Edward McConville* v. *C. C. Howell et al.* I have reached certain conclusions, which I am prepared now to state. It is a bill in equity, brought for the purpose of obtaining a decree for the specific performance of a written contract whereby these complainants, agreed to sell to the defendant Howell, and the defendant Howell agreed to purchase, certain interests in mining property situated in Lake county, in this state. It is alleged that the complainants are the heirs at law of one John McConville, who died at Leadville some time in November, 1880. Some discussion has been had as to whether the proof in this case is sufficient to establish the heirship. Some of the statements given by the principal witness, Mr. Burne, are in the nature of family history, and, to some extent,

[1] From the Colorado Law Reporter.

hearsay; but they probably fall within the very liberal rule which prevails upon that subject. Whether they do or not, I am prepared to say that, in this particular case, the court is satisfied with the proof. We should not apply a very strict rule in a case of this character, for it must be borne in mind that Howell, the defendant, who was the purchaser of this property, was the administrator of the estate of John McConville, deceased, and he dealt with these plaintiffs as the heirs of John McConville, and bought the property from them as such heirs. He must be presumed to know who the heirs were. It was his duty to ascertain that fact. He was the trustee for them, and if they had chosen to repudiate the contract upon the ground that he acted as their trustee, they could in all probability have done so, upon the doctrine that the executor has no right to purchase the property of the heir while he is acting in that capacity. They have not seen fit to do that, and I mention it merely to show that the court ought not to adopt a very strict rule in reference to proof of heirship. I hold, therefore, that the proof is sufficient to show the heirship of these complainants.

In the second place, it is established that the said John McConville was, at the time of his death, the owner of an undivided interest in the several mining claims mentioned in the bill. Precisely what his interest was, it is not material here to consider, but that he had an undivided interest is well established.

In the third place, the complainants, though non-resident aliens, were capable of inheriting property in this state by virtue of the statute of the state upon this subject. The complainants, it appears, are non-resident aliens, and it is insisted that for that reason they were incapable of inheriting any interest in this property from John McConville, and, consequently, had nothing which they could sell. It is said that the result is that there is no consideration for this contract. But the statute of this state upon that subject is very explicit. Chapter 4, p. 90, Gen. Laws Colo. § 15, provides:

"All aliens may take, by deed, will, or otherwise, lands and tenements, and any interest therein, and alienate, sell, and transmit the same to their heirs, or any other persons, whether such heirs or other persons be citizens of the United States or not; and upon the decease of any alien having title to or interest in any lands or tenements, such lands and tenements shall pass and descend in the same manner as if such alien were a citizen of the United States; and it shall be no objection to any person having an interest in such estate that they are not citizens of the United States; but all such persons shall have the same rights and remedies, and in all things be placed upon the same footing, as natural-born citizens of the United States. The personal estate of an alien, dying intestate, who, at the time of his death, shall reside in this state, shall be distributed in the same manner as the estate of natural-born citizens; and all persons shall be entitled to their proper distributive shares of such estate under the laws of this state, whether they are aliens or not."

It is conceded, as of course it could not be questioned, that the statute is broad enough to include this case; but it is suggested that

it is not constitutional.    The provision of the constitution referred to is section 27 of article 2, which reads as follows:

"Aliens, who are or who may hereafter become *bona fide* residents of this state, may acquire, inherit, possess, enjoy, and dispose of property, real and personal, as native-born citizens."

And the argument is that the necessary purport of this provision of the constitution is to limit the right to possess, inherit, or enjoy property to aliens who are or may hereafter become citizens; in other words, that it prohibits the legislature from extending the right to non-resident aliens.    I do not agree to that construction of the constitution.    The very same question was decided by the supreme court of California, and I think upon very sound reasoning, in the case of *State* v. *Rogers*, 13 Cal. 159.    The constitutional provision, and also the statutory provision, in California, were substantially like those in Colorado, and the points decided in this case were these:

" The constitution is not a grant of power, or an enabling act, to the legislature.    It is a limitation on the general powers of a legislative character, and restrains only so far as the restriction appears, either by express terms or by necessary inference.

" The act of April 19, 1856, permitting non-resident aliens to inherit real and personal estate, is constitutional.    The constitution (article 1, § 17) [which corresponds to the section of the Colorado constitution I have just read] gives the *bona fide* resident alien certain rights, which may be enlarged, but cannot be abridged, by the legislature."

That I understand to be a sound rule; the rights guarantied by the constitution cannot be taken away, but other rights may be given to the same or to other persons.    The legislature may go further in the conferring of these rights upon aliens, but they cannot do less than that which the constitution requires.

It appears that the complainants, through their lawfully authorized agent, and the defendant C. C. Howell entered into the contract set out in the bill, whereby the defendant agreed to buy the interest in the said mining claims.    In my opinion the said contract was not a mere option to buy on the part of Howell, from which he could withdraw at pleasure, without restoring to complainants the possession of the property and of all rights as they existed before the execution of the contract.    Here arises a question of a good deal of importance in the case.    It depends upon the construction of the contract between the parties; it is a very voluminous contract; I shall not undertake to read it.    It is in substance a contract whereby these heirs agreed to sell this mining property to Howell.    Howell agreed to spend $25,000 within a year in developing the mines, and agreed to pay $33,000 as a consideration for the conveyance at the end of the year.    There were other provisions, which need not be referred to.    The one relied upon by the defendant, as constituting this contract a mere option, is as follows:

" Provided always, in the event of such failure to complete such purchase, he, [that is, Howell,] his heirs and assigns, upon the delivery of possession of said lands and mining premises as aforesaid to the parties of the first part, their heirs and assigns, shall in nowise be held responsible for the payment of said purchase money."

There is an unequivocal promise in this agreement on the part of Howell to pay the $33,000 within the year, but this clause is added, whereby, as it appears to me, he was given an election to discharge the obligation by a redelivery of the property to the heirs before the end of the year. I suppose that, like many of these transactions, the value of the property was somewhat problematical, and would depend upon development and investigation, and so Mr. Howell desired to reserve the right or privilege of an option, in case it turned out to be of less value than supposed, to redeliver the property, and thereby discharge himself from liability for the purchase money. But he failed and refused to redeliver the possession to these complainants. They demanded possession and were refused. In my judgment the option was at an end; the right of Mr. Howell, which he had reserved by this clause of the agreement, was no longer available to him after his refusal to avail himself of it when the demand was made, and thereupon the grantors in the contract had a right to treat it as a sale, and proceed in equity for the purpose of obtaining a specific performance.

I do not overlook the question, which has been discussed a good deal by counsel, as to whether this is a case within the equity jurisdiction of the court; in other words, as to whether there is a plain, speedy, and adequate remedy at law. That depends, perhaps, upon the question whether the vendor here is entitled to a lien upon the property for the purchase money. Undoubtedly he would not have been if Mr. Howell had redelivered the property to him in accordance with the terms of the contract; but since Mr. Howell declined to do that, and chose to retain the possession, and still retains it, and appears to be in the enjoyment of the property, and engaged in its development and use, I have no doubt that the contract becomes, in substance, a bond for a deed, or contract for the purchase of real estate, which gives the vendor a lien for his purchase money, which he may proceed in equity to enforce. It is true, there is a conflict of authority upon the question whether a party, under such circumstances, may come into a court of equity, or whether he is obliged simply to proceed at law. This question, however, is set at rest, so far as this court is concerned, by the decision of the supreme court of the United States in *Lewis* v. *Hawkins*, 23 Wall. 119. That was a case of a vendor who gave a simple contract to convey. There was no conveyance. He went into a court of equity to enforce the specific performance of the contract, and to claim a lien upon the property. The argument for defendants in that case, by very distinguished counsel, was precisely the same that has been made here. They said:

"The estate in fee being in Lewis, [that is, the vendor,] how can ne have a lien? The man cannot have a lien on that which is his own." But the court answered it: "The seller, under such circumstances, has a vendor's lien, which is certainly not impaired by withholding the conveyance. The equitable interest of the vendee is alienable, descendible, and divisible, in like manner as real estate held by legal title." And so they maintained the jurisdiction in equity to enforce the performance of the contract, and to enforce a lien upon the property, on the ground that, although there was no formal conveyance by the vendor to the vendee, by the contract to convey there was an equitable estate vested in the vendee, which he could sell and dispose of, and the other party had a right to treat it as a sale, and proceed to enforce his vendor's lien upon the property.

I think in this case that the complainants are entitled to a decree requiring the payment of the purchase money upon their tendering a deed to Mr. Howell, and for the enforcement of the decree, if necessary, by the sale of the premises.